IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CYNTHIA MILLONZI | § |
| | § |
| V. | § NO. 1:17-CV-488-LY |
| | § |
| ADJUTANT GENERAL'S | § |
| DEPARTMENT OF TEXAS, et al. | § |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before this Court are State Defendants' Motion to Dismiss (Dkt. No. 25), Plaintiff's Response (Dkt. No. 28), and State Defendants' Reply (Dkt. No. 32); Federal Defendants' Motion to Dismiss (Dkt. No. 24), Plaintiff's Response (Dkt. No. 27), and Federal Defendants' Reply (Dkt. No. 31) . The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. GENERAL BACKGROUND**

Plaintiff Cynthia Millonzi brings this suit against the Adjutant General's Department of Texas, John F. Nichols in his official capacity as Texas Adjutant General, Joseph L. Lengyl in his official capacity as Chief of the National Guard Bureau, Ryan McCarthy in his official capacity as Acting Secretary of the Department of the Army,[1] and the United States. She alleges discrimination and retaliation in violation of Title VII, as well as claims brought pursuant to the First Amendment and the due process and equal protection clauses of the Constitution.

---

[1] Acting Secretary McCarthy is automatically substituted for former Acting Secretary Robert Speer.

In 2008, Millonzi was hired as a dual-status military technician working at the Texas Adjutant General's office. Previous to this she served in the military for more than two decades. Beginning in 2013, Millonzi alleges that she began experiencing discrimination based on her sexual orientation. In June 2013—following the Supreme Court's decision in *U.S. v. Windsor*—Millonzi alleges that she gave an interview to *L Style G Style* about coming out in the Texas National Guard. Though in the article she stated that her superiors were supportive of her decision, she claims that after the interview was published, she was subjected to discrimination on the basis of her sexual orientation (or gender). Millonzi alleges she was reassigned from the Adjutant General's Office, and later was passed over for a promotion to Chief of Staff. She further alleges that the new Chief of Staff, Colonel Scott MacLeod ordered an investigation into Millonzi's alleged absences and tardiness, and contends that the investigator, Colonel Amy Cook, had previously discriminated against others based on their sexual orientation.

The investigation ultimately found that Millonzi had submitted false military leave papers, contending that she stated she was eligible for leave to attend training that had not been approved. Col. MacLeod accepted the recommendation that Millonzi be terminated, and forwarded it to Brigadier Genereral Patrick M. Hamilton. Millonzi then submitted an informal EEO complaint that was dismissed, and BG Hamilton thereafter accepted Col. MacLeod's recommendation. Millonzi was given the option to retire or be terminated, and she chose to retire. Shortly after, Millonzi filed a second EEO complaint, which was once again dismissed. This time, she appealed to the Office of Federal Operations, which reversed the dismissal. However, the Adjutant General—who has final authority on any appeals— dismissed her complaint after the reversal. Millonzi subsequently retired from the National Guard.

As noted, Millonzi alleges the Defendants discriminated and retaliated against her in violation of Title VII, and violated her rights under the First Amendment, Equal Protection, and Due Process clauses. The defendants, grouped as "State" and "Federal," move to dismiss, arguing that this Court lacks jurisdiction to review Millonzi's claims, or, in the alternative, that she has failed to state a claim upon which relief may be granted.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Defendants move to dismiss pursuant to Rule 12(b)(1) alleging a lack of subject-matter jurisdiction. Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider the complaint alone; the complaint plus undisputed facts evidenced in the record; or the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P.12(b)(6). In deciding a Rule

12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. ANALYSIS

**A.     Title VII Claims**

Millonzi brings claims under Title VII for discrimination, based on her gender/sexual orientation, and retaliation, based on her exercise of free speech. Both Federal and State Defendants move to dismiss Millonzi's Title VII claims on the basis that they are barred by the *Feres* doctrine. In *Feres v. United States*, 340 U.S. 135 (1950), the Supreme Court held that military personnel may not bring claims under the Federal Torts Claims Act to recover for injuries that occurred "incident to their service." This doctrine has since been extended to also bar suits brought by military personnel pursuant to *Bivens*, § 1983, or Title VII. *United States v. Stanley*, 483 U.S. 669, 684 (1987) (*Bivens*); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1035-36 (5th Cir. 1986) (§ 1983); *Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000) (Title VII). *See also, Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294-95 (5th Cir. 2008)

4

Millonzi's case is complicated, however, by unique legal issues posed by claims brought by dual-status technicians within the National Guard. Dual-status technicians "occupy a unique position in the federal personnel system, maintaining a dual status as civilians and [s]oldiers while serving in a hybrid state/federal system." Major Michael J. Davidson & Major Steve Walters, *Neither Man nor Beast: The National Guard Technician, Modern Day Military Minotaur*, ARMY LAW., Dec. 1995, at 49). They "provide support in the administration and training of the National Guard military organization and for the day-to-day maintenance and repair of equipment which cannot be accomplished during normal military training periods." *Walch*, 533 F.3d at 295 (quoting Davidson & Walters, at 49). Dual-status technicians are nominal federal civilian employees, but must obtain and maintain military membership in a state National Guard to remain in the position. *Id.*

Nearly every circuit to consider the issue, including the Fifth Circuit, has held that the *Feres* doctrine applies to Title VII claims made by dual-status technicians. *Id.* at 301.[2] Millonzi is correct that, under Fifth Circuit precedent, a dual-status technician's employment is not "irreducibly military in nature," such that all claims made by these individuals are barred; indeed, this standard has only been applied by the Sixth Circuit, and has not yet been adopted by any other circuit. *Bowers v. Wynne*, 615 F.3d 455, 468 (6th Cir. 2010). Rather, the Fifth Circuit applies a case-by-case approach to the question. In this circuit, claims under Title VII for dual-status technicians "must be categorized as either arising from their position as a civilian employee of a military department, or

---

[2]*See Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 95 (2d Cir. 2004); *Willis v. Roche*, 256 F. App'x 534, 537 (3d Cir. 2007); *Wetherill v. Green*, 616 F.3d 789, 795-96 (8th Cir. 2010); *Zuress v. Donley*, 606 F.3d 1249, 1255 (9th Cir. 2010); *cf. Norris v. Sec'y, U.S. Dep't of Army*, 517 F. App'x 873, 874 (11th Cir. 2013) (finding that—under any of the tests put forth by the other circuits— the plaintiff's claims for employment discrimination were barred by *Feres*). *But see Jentoft v. United States*, 450 F.3d 1342, 1348 (Fed. Cir. 2006) (finding that a dual-status technician's claim under the Equal Pay Act was not barred by *Feres*).

their position as a uniformed service member." *Brown*, 227 F.3d at 299. A dual-status technician has both military and civilian hats "only one of which is worn at any particular time." *Walch*, 533 F.3d at 295. The question, therefore, is whether the plaintiff was "performing 'purely' civilian job duties." *Filer v. Donley*, 690 F.3d 643, 649 (5th Cir. 2012) (citing *Brown*, 227 F.3d at 299). Thus, if a dual-status technician's Title VII claims relate solely to the plaintiff's civilian status, those claims can proceed.³ The Fifth Circuit cautions, however, that "a court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure." *Walch*, 533 F.3d at 301.

The case law makes clear that the action must be "purely" civilian to proceed; any actions that "involve . . . intrusion into military personnel decisions are not permissible," even if that decision may also have a civilian component. *Brown*, 227 F.3d at 299. In fact, while courts have noted the theoretical possibility that such a case could exist, the undersigned was unable to find a single case in which a federal court found that a dual-status technician's claims were purely civilian in nature.⁴ Though Millonzi attempts to cast her claims as solely civilian in nature—indeed, she uses the word "civilian" extensively through her Complaint— it is clear that a decision in Millonzi's favor

---

³*See Wetherill*, 616 F.3d at 798 ("Because Title VII applies to civilian employees of military departments, dual-status technicians could theoretically suffer an employment injury not incident to military service, and thus maintain a justiciable suit under Title VII against the Guard. This is not such a case, however."); *Luckett v. Bure*, 290 F.3d 493, 499 (2d Cir. 2002) ("There may be cases in which dual-status, military-civilian employees allege a justiciable Title VII complaint arising purely from their civilian employment.").

⁴This statement excludes *Jentoft*, which merely argues that claims may be brought by a DST, and does not analyze whether the claims arose from the military or civilian aspects of the DST position.

in this case would implicate an intrusion into the very questions of military hierarchy that *Feres* was designed to avoid. First, at all times, the superiors she accuses of discrimination and retaliation were her military, as well as civilian, supervisors, and she was required to wear her uniform when at work. Second, Millonzi was terminated for allegedly falsifying military leave documents. In fact, the investigation report addressed both military and civilian hours and found that she had engaged in conduct unbecoming an officer. Finally, she retired from the National Guard shortly after the Adjutant General issued his final decision on her EEO appeals. This means that, if her claims were successful, in addition to the Court's decision directly affecting military personnel decisions, the Court would also be forced to reinstate her not only to her civilian position, but also into the National Guard.

Millonzi does not dispute that the investigation found that she falsified military leave documents or that the actions taken were by her military supervisors. Rather, she asserts that this does not transform the employment decision from a purely civilian one to one covered by *Feres*. Millonzi relies heavily on the fact that she was not given access to a military lawyer for the EEO appeals process. However, this, by itself, does not mandate a finding that her claims are purely civilian. Millonzi was terminated first from her civilian position, but subsequently retired from her military position due to her termination. *See Cantu v. Nichols*, 2012 WL 4962115 at *1 (S.D. Tex. Oct. 16, 2012) (explaining that the plaintiff was removed from his technician position and later discharged from the National Guard). Moreover, even actions taken during the work week, seemingly in the civilian sphere, may still be decisions that affect the military hierarchy such that they are subject to *Feres*. Take, for example, the Fifth Circuit's decision in *Filer*. In that case, even though the alleged harassment happened solely during the work week in the plaintiff's civilian job,

7

the court found that the claims nevertheless affected the military structure, as the plaintiff's civilian supervisors were also her military supervisors (as is also the case here). *Filer*, 690 F.3d at 649-50; *see also Overton*, 373 F.3d at 95-96. Similarly, in a case out of the Middle District of Alabama, the court found that even a claim for improper relations with a superior was barred by *Feres* where the plaintiff was removed from her civilian, but not her Guard position. *Norris v. McHugh*, 857 F. Supp. 2d 1229, 1235-36 (M.D. Ala. 2012).

Millonzi also relies on a decision by the EEOC to support her argument. Dkt. No. 28 at 3-4. In that case, the Commission cited to case law out of the Fifth Circuit to hold that each Title VII complaint by dual-status technicians should be assessed on a case-by-case basis to determine whether the "discriminatory act arose in the individual's military capacity or civilian capacity." *See Neville v. Donley*, EEOC Doc. 0720110023, 2013 WL 5295937, at *4 (Aug. 1, 2013). Applying this framework, the Commission found that it had jurisdiction over the plaintiff's claims as the alleged discriminatory acts occurred in a purely civilian sphere. *Id.* at *5. Noting that the discrimination in that case occurred during the civilian work week, Millonzi argues that the result should be the same here, since that is exactly what happened in her case.

However, Millonzi's situation is not analogous to that of *Neville*. Millonzi contends that she was terminated from her civilian position based on her sexual orientation, and is correct in noting that the effect was originally felt in her civilian status as she was only later asked to retire from her National Guard position. However, the situation is vastly different from that in *Neville*, where the plaintiff was allegedly harassed by her colleagues during the civilian work week. Millonzi has not alleged harassment, but rather that she was terminated based on her sexual orientation. Additionally, Millonzi was removed from her position for allegedly turning in false leave papers, indicating that

8

she was approved for military leave when she was not. This clearly moves the allegations into the military sphere, as this Court would be required to determine whether these allegations were merely a pretext in order to proceed.[5] Though Millonzi goes out of her way to avoid challenging her military discharge, the fact remains that removal from her civilian position directly affected her military discharge, and further, that she was terminated for actions relating to her military status. Moreover, even were the facts similar to those in *Neville*, this Court is not bound by EEOC precedent; rather it must apply Fifth Circuit caselaw. *Filer* dealt with a nearly identical situation to that in *Neville* and in that case the Fifth Circuit came to the opposite result. *See* 690 F.3d at 649–50.[6] Thus, even assuming that the facts are similar to those in *Neville*, the Fifth Circuit's decision in *Filer* governs, and Millonzi's Title VII claims should therefore be dismissed for lack of jurisdiction.

**B.** *Mindes* **Claims**

This leaves only the constitutional claims that Millonzi has characterized as a "*Mindes* action." Millonzi asserts claims for First Amendment retaliation and violations of the equal protection and due process clauses. Here, she asserts that she was forced to leave her position based on her exercise of free speech, discriminated against based on her sexual orientation (or sex), and deprived of a hearing prior to her termination. Millonzi brings these claims alleging that, under *Mindes v. Seaman*, an individual is permitted to bring suit claiming that an internal military decision violated a Constitutional, statutory, or regulatory rule after exhausting all administrative remedies.

---

[5] At this stage, the Court must accept the pleaded facts as true, and Millonzi has pled that the actions taken by her superiors were solely in their civilian status. However, the report generated to support Millonzi's removal indicates both "fraud in entitlements" and "conduct unbecoming an officer." Dkt. No. 25-2 at 2, 8.

[6] Additionally, only the EEOC has so far found any Title VII claim by a dual-status technician to be justiciable. Every federal court to look at such a claim has come to the opposite result.

453 F.2d 197, 299 (5th Cir. 1971). Thus, Millonzi asserts, her claims that the Defendants violated the Constitution should not be dismissed under the *Feres* doctrine.

First, Millonzi's claims for First Amendment retaliation and equal protection are merely an attempt to recast her Title VII discrimination and retaliation claims. It cannot be the case that a plaintiff whose Title VII claims are barred by *Feres* can simply recast them as constitutional violations to avoid the *Feres* bar. The decision in *Walch* supports this reasoning. In that case, the court found that equal protection claims asserted under § 1983 or *Bivens* would also be barred by *Feres*, just as the plaintiff's Title VII claims were. *Walch*, 533 F.3d at 297. The court reasoned that "allowing claims pursuant to *Bivens* or Sections 1983 and 1985 to be brought by a National Guard technician against his chain of military command—even if some in that command also are technicians in addition to being Guardsmen—is contrary to the principles announced" in prior precedent. *Walch*, 533 F.3d at 297. Thus, because "[i]t is not possible to disentangle for these purposes [a technician's] military role and command structure from [his/her] civilian employment . . . without raising the same concerns as when those claims are brought by traditional guardsmen," constitutional claims made by a dual-status technician are barred under the *Feres* doctrine. *Id.*; *see also Bradley v. La. Air Nat. Guard*, 2010 WL 5207593, at *5 (E.D. La. Dec. 15, 2010) (finding that claims for discrimination and retaliation brought under *Bivens*, §§ 1983 or 1985, or Title VII were barred by *Feres*); *Perez v. Puerto Rico Nat. Guard*, 951 F. Supp. 2d 279, 291–92 (D.P.R. 2013) (holding that the plaintiff's claim for a violation of the Equal Protection clause, made under § 1983, was barred under *Feres*). Millonzi's claims for First Amendment retaliation and equal protection are identical to those made under Title VII, and should therefore be dismissed for lack of jurisdiction.

The court in *Walch* addressed the plaintiff's claim for violations of his procedural due process rights separately, though the opinion is not entirely clear on the distinction. Thus, the viability of the *Mindes* doctrine after *Walch* is murky, at best. In *Walch*, the court applied *Mindes* to the plaintiff's claim that his procedural due process rights had been violated. *Walch*, 533 F.3d at 302. It did not address the plaintiff's discrimination or retaliation claims, as it instead held, earlier in the decision, that these were barred under *Feres*. *Id.* at 297. Since 2008, when *Walch* was decided, *Mindes* has only been cited by one district court in the Fifth Circuit, where a plaintiff argued that the technician removal procedures violated his due process rights. *See Cantu v. Nichols*, 2012 WL 4962115, at *4-5 (S.D. Tex. Oct. 16, 2012). Both *Walch* and *Cantu* refer to *Mindes* as an exception to the *Feres* doctrine that applies to "internal military decisions" when four factors have been met. *Walch*, 533 F.3d at 302; *Cantu*, 2012 WL 4962115 at *3. Thus, it appears possible for a procedural due process claim to fall within the exception to the *Feres* doctrine that *Mindes* set forth.[7] Ultimately, both decisions dismissed the procedural due process claim without addressing the four *Mindes* factors so the import of those cases on Millonzi's due process claim is unclear.

Regardless, Millonzi's due process claim should be dismissed. As was the case in *Cantu*, Millonzi argues that her procedural due rights were violated because she was not given a hearing.

---

[7]Interestingly, the court in *Walch* noted that: "[b]ecause courts may not be the only tribunals available . . . we now examine certain *non-judicial* remedies that [the plaintiff] insists he should be allowed to pursue" before addressing the plaintiff's procedural due process claims under *Mindes*. 533 F.3d at 301 (emphasis added). It is possible, from this language, to infer that the Fifth Circuit intended to indicate that the *Mindes* analysis applies solely to administrative remedies, rather than to constitutional procedural due process claims, though this is far from clear. Moreover, the court in *Walch* solely applied this analysis to the plaintiff's claims with regard to his military discharge, and not his Title VII discrimination claims. *Id.* at 303. On the other hand, the court in *Cantu* cited *Walch* to apply *Mindes* to constitutional due process claims resulting from the plaintiff's removal from the technician position. 2012 WL 4962115 at *4-5.

In *Walch* the plaintiff challenged his dismissal from the national guard—an internal military decision subject to *Mindes*. It is not entirely clear that *Mindes* even applies to Millonzi's claim, since she is complaining about her termination without a hearing from her *civilian* position.[8] However, even if *Mindes* applies to her EEO complaint procedures, the holdings from *Walch* and *Cantu* clearly state that there is no requirement that Millonzi be given a hearing. *See Walch*, 533 F.3d at 302; *Cantu*, 2012 WL 4962115 at *5. In *Cantu*, the court addressed an identical argument and found that the adjutant general has the right to remove a dual-status technician for cause at any time.[9] 2012 WL 4962115, at *5 (citing 32 U.S.C. § 709(f)(2)). Thus a hearing was not constitutionally required. *Id.* Nor does Millonzi point to any statutes or regulations she claims were violated during the process that would otherwise support her claim for procedural due process. *See id.* As such, this claim should also be dismissed.

## IV. RECOMMENDATIONS

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss (Dkt. Nos. 24 & 25).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

---

[8] Because Millonzi retired from the national guard, there are no military proceedings to challenge.

[9] The court in *Cantu* also held that the plaintiff's claim was moot as he did not challenge his military discharge. Because membership in the national guard is a requirement for all dual-status technicians, failure to challenge his military discharge mooted the plaintiff's challenge to his technician removal. *Cantu*, 2012 WL 4962115 at *4.

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 2nd day of January, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE